1
2
3
4
5
6
7
8        UNITED STATES DISTRICT COURT
9        CENTRAL DISTRICT OF CALIFORNIA
10
11
GAYLE ALLEN DARCHE, JR.,                    Case No. 5:16-cv-01894-SHK
12
                            Plaintiff,
13
              v.                            OPINION AND ORDER
14
NANCY A. BERRYHILL, Acting
15 Commissioner of Social Security,
16                          Defendant.
17
18
19        Plaintiff Gayle Allen Darche, Jr. ("Plaintiff"), seeks judicial review of the
20 final decision of the Commissioner of the Social Security Administration
21 ("Commissioner" or the "Agency") denying his application for disability
22 insurance benefits ("DIB"), under Title II of the Social Security Act (the "Act").
23 This Court has jurisdiction, under 42 U.S.C. § 405(g), and, pursuant to 28 U.S.C.
24 § 636(c), the parties have consented to the jurisdiction of the undersigned United
25 States Magistrate Judge.  For the reasons stated below, the Commissioner's
26 decision is REVERSED and this action is REMANDED for further proceedings
27 consistent with this Order.
28 / / /

# I. BACKGROUND

Plaintiff filed an application for DIB on October 28, 2011 and alleged disability beginning on December 12, 2009. Transcript ("Tr.") 134-35.[1] Following a denial of benefits, Plaintiff requested a hearing before an administrative law judge ("ALJ") and, on January 25, 2013, ALJ James Nguyen determined that Plaintiff was not disabled. Tr. 8-17. Plaintiff sought review of the ALJ's decision with the Appeals Council, however, review was denied on March 21, 2014. Tr. 1-4. Plaintiff then sought district court review of the ALJ's unfavorable decision and, on June 15, 2015, the district court reversed the Commissioner's decision and remanded the case for further proceedings after determining that the ALJ had erred by rejecting Plaintiff's subjective symptom testimony without providing clear and convincing reasons for doing so. Tr. 432-44.

On April 14, 2016, ALJ Troy Silva held an administrative hearing and, on May 11, 2016, ALJ Silva denied Plaintiff's claim, in part, and granted it in part. Tr. 322-46, 353-400. Specifically, ALJ Silva found that Plaintiff was disabled from December 12, 2009, through January 23, 2011, but that "[o]n January 24, 2011, medical improvement occurred that is related to the ability to work, and [Plaintiff] has been able to perform substantial gainful activity [("SGA")] from that date through [May 11, 2016,] the date of th[e] decision." Tr. 328. This appeal followed.

# II. STANDARD OF REVIEW

This Court is required to affirm the Commissioner's decision if the decision is based on correct legal standards and the legal findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); Batson v. Comm'r Soc. Sec. Admin., 359 F.3d 1190, 1193 (9th Cir. 2004). Substantial evidence is "more

[1] A certified copy of the Administrative Record was filed on February 28, 2017. Electronic Case Filing Number ("ECF No.") 16. Citations will be made to the Administrative Record or Transcript page number rather than the ECF page number.

than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citation and internal quotation marks omitted).  In reviewing the Commissioner's alleged errors, this Court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusions." Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986).

"'When evidence reasonably supports either confirming or reversing the ALJ's decision, [the Court] may not substitute [its] judgment for that of the ALJ.'" Ghanim v. Colvin, 763 F.3d 1154, 1163 (9th Cir. 2014) (quoting Batson, 359 F.3d at 1196)); see also Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002) ("If the ALJ's credibility finding is supported by substantial evidence in the record, [the Court] may not engage in second-guessing." (citation omitted)).  A reviewing court, however, "cannot affirm the decision of an agency on a ground that the agency did not invoke in making its decision." Stout v. Comm'r Soc. Sec. Admin., 454 F.3d 1050, 1054 (9th Cir. 2006) (citation omitted).  Finally, a court may not reverse an ALJ's decision if the error is harmless. Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (citation omitted).  "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." Shinseki v. Sanders, 556 U.S. 396, 409 (2009).

## III.    DISCUSSION

### A.    Establishing Disability Under The Act

To establish whether a claimant is disabled under the Act, it must be shown that:

> (a) the claimant suffers from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months; and

(b) the impairment renders the claimant incapable of performing the work that the claimant previously performed and incapable of performing any other substantial gainful employment that exists in the national economy.

Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)). "If a claimant meets both requirements, he or she is 'disabled.'" Id.

The ALJ employs a five-step sequential evaluation process to determine whether a claimant is disabled within the meaning of the Act. Bowen v. Yuckert, 482 U.S. 137, 140 (1987); 20 C.F.R. § 404.1520(a). Each step is potentially dispositive and "if a claimant is found to be 'disabled' or 'not-disabled' at any step in the sequence, there is no need to consider subsequent steps." Tackett, 180 F.3d at 1098; 20 C.F.R. § 404.1520. The claimant carries the burden of proof at steps one through four, and the Commissioner carries the burden of proof at step five. Tackett, 180 F.3d at 1098.

The five steps are:

Step 1. Is the claimant presently working in a [SGA]? If so, then the claimant is "not disabled" within the meaning of the [] Act and is not entitled to [DIB]. If the claimant is not working in a [SGA], then the claimant's case cannot be resolved at step one and the evaluation proceeds to step two. See 20 C.F.R. § 404.1520(b).

Step 2. Is the claimant's impairment severe? If not, then the claimant is "not disabled" and is not entitled to [DIB]. If the claimant's impairment is severe, then the claimant's case cannot be resolved at step two and the evaluation proceeds to step three. See 20 C.F.R. § 404.1520(c).

Step 3. Does the impairment "meet or equal" one of a list of specific impairments described in the regulations? If so, the claimant is

"disabled" and therefore entitled to [DIB]. If the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, then the claimant's case cannot be resolved at step three and the evaluation proceeds to step four. See 20 C.F.R. § 404.1520(d).

Step 4. Is the claimant able to do any work that he or she has done in the past? If so, then the claimant is "not disabled" and is not entitled to [DIB]. If the claimant cannot do any work he or she did in the past, then the claimant's case cannot be resolved at step four and the evaluation proceeds to the fifth and final step. See 20 C.F.R. § 404.1520(e).

Step 5. Is the claimant able to do any other work? If not, then the claimant is "disabled" and therefore entitled to [DIB]. See 20 C.F.R. § 404.1520(f)(1). If the claimant is able to do other work, then the Commissioner must establish that there are a significant number of jobs in the national economy that claimant can do. There are two ways for the Commissioner to meet the burden of showing that there is other work in "significant numbers" in the national economy that claimant can do: (1) by the testimony of a vocational expert [("VE")], or (2) by reference to the Medical-Vocational Guidelines at 20 C.F.R. pt. 404, subpt. P, app. 2 [("the Listings")]. If the Commissioner meets this burden, the claimant is "not disabled" and therefore not entitled to [DIB]. See 20 C.F.R. §§ 404.1520(f), 404.1562. If the Commissioner cannot meet this burden, then the claimant is "disabled" and therefore entitled to [DIB]. See id.

Id. at 1098-99.

/ / /

/ / /

## B. Establishing Continuing Disability Under The Act

If a claimant is found to be disabled under the Act, the ALJ must determine whether the claimant's disability continues through the date of the decision. "A Social Security disability benefits claimant is no longer entitled to benefits when substantial evidence demonstrates (1) 'there has been any medical improvement in the [claimant's] impairment' and (2) the claimant 'is now able to engage in [SGA].'" Attmore v. Colvin, 827 F.3d 872, 873 (9th Cir. 2016) (quoting 42 U.S.C. § 423(f)(1)). The ALJ employs an eight-step evaluation process to determine whether a claimant continues to be disabled within the meaning of the Act. 20 C.F.R. § 404.1594. The eight steps are set out below:

Step 1: Is the claimant "engaging in [SGA]? If [the claimant is] (and any applicable trial work period has been completed), [the Agency] will find disability to have ended." 20 C.F.R. § 404.1594(f)(1).

Step 2: If the claimant is not engaging in SGA, does the claimant "have an impairment or combination of impairments which meets or equals the severity of an impairment listed in [the Listings]? If [so, the claimant's] disability will be found to continue." 20 C.F.R. § 404.1594(f)(2).

Step 3: Has there been "medical improvement" in the claimant's condition? Id. § 404.1594(f)(3). "Medical improvement is any decrease in the medical severity of [a claimant's] impairment(s) which was present at the time of the most recent favorable medical decision that [the claimant was] disabled or continued to be disabled," as established by "improvement in the symptoms, signs, and/or laboratory findings associated with [the claimant's] impairment(s)." 20 C.F.R.§ 404.1594(b)(1). "If there has been medical improvement as shown by a decrease in medical severity," the analysis proceeds to the fourth step. 20 C.F.R. § 404.1594(f)(3). "If there has been no decrease in medical severity, there has been no medical improvement" and the analysis proceeds to step five. Id.

Step 4: If there has been medical improvement, the Agency must determine "whether it is related to [the claimant's] ability to do work . . . i.e., whether or not there has been an increase in the residual functional capacity [("RFC")] based on the impairment(s) that was present at the time of the most recent favorable medical determination." 20 C.F.R. § 404.1594(f)(4). "If medical improvement is not related to [the claimant's] ability to do work," the analysis proceeds to step five. Id. "If medical improvement is related to [the claimant's] ability to do work," the analysis proceeds to step six. Id. "The Ninth Circuit has noted that 'Congress enacted the medical improvement standard as a safeguard against the arbitrary termination of benefits.'" Velez v. Berryhill, No. EDCV 16-01304-JDE, 2017 WL 2672070, *6 (C.D. Cal. June 20, 2017) (quoting Attmore, 827 F.3d at 876).

Step 5: If no medical improvement was found at step three, or if the Agency found that the medical improvement is not related to the claimant's ability to work at step four, the Agency then considers "whether any of the exceptions in paragraphs (d) and (e) of this section apply." 20 C.F.R. § 404.1594(f)(5). "If none of them apply, [the claimant's] disability will be found to continue." Id. "If one of the first group of exceptions to medical improvement applies," the analysis proceeds to step six. Id. "If an exception from the second group of exceptions to medical improvement applies, [the claimant's] disability will be found to have ended. The second group of exceptions to medical improvement may be considered at any point in this process." Id.

Step 6: "If medical improvement is shown to be related to [the claimant's] ability to do work or if one of the first group of exceptions to medical improvement applies, [the Agency] will determine whether all [the claimant's] current impairments in combination are severe (see [20 C.F.R.] § 404.1521)." 20 C.F.R. § 404.1594(f)(6). If the claimant's current impairments in combination "show[] significant limitation[s] [in the claimant's] ability to do basic work activities," the analysis proceeds to step seven. Id. If the claimant's "current impairments in

7

combination do not significantly limit [the claimant's] physical or mental abilities to do basic work activities, these impairments will not be considered severe in nature [and the claimant] will no longer be considered to be disabled." Id.

Step 7: The Agency assesses the claimant's RFC based on the current impairments and determines if the claimant can perform past relevant work ("PRW"). 20 C.F.R. § 404.1594(f)(7). "If [the claimant] can do such work, disability will be found to have ended." Id.

Step 8: If the claimant is not able to perform PRW, the agency "consider[s] whether [the claimant] can do other work given the [claimant's RFC and the claimant's] age, education, and past work experience." 20 C.F.R. § 404.1594(f)(8). "If [the claimant] can, [the Agency] will find that [the claimant's] disability has ended. If [the claimant] cannot, [the Agency] will find that [the claimant's] disability continues." Id.

C.    Summary Of ALJ's Findings

    1.    ALJ Found That Plaintiff Was Disabled Using
        the Five Step Sequential Evaluation Process.

The ALJ determined that "[Plaintiff] meets the insured status requirements of the . . . Act through June 30, 2014." Tr. 330. The ALJ then found at step one, that "[Plaintiff] has not engaged in [SGA] since December 12, 2009, the date [Plaintiff] became disabled (20 C.F.R. 404.1520(b), 404.1571 et seq.)." Id.

At step two, the ALJ found that "[f]rom December 12, 2009 through January 23, 2011, the period during which [Plaintiff] was under a disability, [Plaintiff] had the following severe impairments: lumbosacral spine strain/sprain; right knee status post arthroscopy; right ankle sprain; status post left ankle open reduction internal fixation[,] and major depressive disorder (20 CFR 404.1520(c))." Tr. 330-31.

At step three, the ALJ found that "[f]rom December 12, 2009 through January 23, 2011, [Plaintiff] did not have an impairment or combination of

8

impairments that meets or medically equals the severity of one of the listed impairments in [the Listings]." Tr. 331. In so finding, the ALJ considered and discussed Plaintiff's physical and mental impairments. Tr. 331-32. With respect to Plaintiff's physical impairments, the ALJ found that "they do not meet or medically equal the criteria of any medical listing, singly or in combination" because "[n]o treating or examining physician has recorded findings equivalent in severity to the criteria of any listed impairment, nor does the evidence show medical findings that are the same or equivalent to those of any listed impairment." Tr. 331.

With respect to Plaintiff's mental impairments, the ALJ found that from December 12, 2009, through January 23, 2011, "[t]he severity of [Plaintiff's] mental impairments, considered singly and in combination, do not meet or medically equal the criteria of Listing 12.04."[2] Id. In reaching this conclusion, the ALJ specifically found that Plaintiff had only "mild" limitations in activities of daily living ("ADL") and social functioning, "moderate" limitations in concentration, persistence, and pace, and that Plaintiff had not "experienced any episodes of decompensation of extended duration" as a result of Plaintiff's medically determinable mental impairments. Tr. 331-32.

In preparation for step four, the ALJ found that from December 12, 2009, through January 23, 2011, Plaintiff had the RFC to:

---

[2] The regulations require the ALJ to evaluate whether a claimant's mental impairments are severe. See 20 C.F.R. § 404.1520a. The Agency "ha[s] identified four broad functional areas in which [it] rate[s] the degree of [a claimant's] functional limitation: Understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself." 20 C.F.R. § 404.1520a(c)(3) (citation omitted). The Agency rates the degree of a claimant's functional limitations in these four areas by "us[ing] the following five-point scale: None, mild, moderate, marked, and extreme. The last point on the scale represents a degree of limitation that is incompatible with the ability to do any gainful activity." 20 C.F.R. § 404.1520a(c)(4). "If [the Agency] rate[s] the degrees of [a claimant's] limitation as 'none' or 'mild,' [it] will generally conclude that [the claimant's] impairment(s) is not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in [the claimant's] ability to do basic work activities." 20 C.F.R. § 404.1520a(d)(1) (citing 20 C.F.R. § 404.1522).

perform sedentary work as defined in 20 CFR 404.1567(a) with the following limitations: [Plaintiff] was able to lift and/or carry ten pounds occasionally and less than ten pounds frequently; was able to stand and/or walk for four hours in an eight-hour day, with the use of a cane for ambulation; was able to sit for six hours in an eight-hour day; was never able to kneel, squat or push and pull with the right lower extremity; was not able to crawl or climb ladders, ropes and scaffolds; was occasionally able to climb ramps and stairs and was able to understand, remember and perform three- or four-step instructions and procedures.

Tr. 332.

At step four, the ALJ found that "[f]rom December 12, 2009 through January 23, 2011, [Plaintiff] was unable to perform any past relevant work (20 CFR 404.1565)." Tr. 334.

In preparation for step five, the ALJ found that "[Plaintiff] was an individual closely approaching advanced age, on the established disability onset date (20 CFR 404.1563)." Tr. 335. The ALJ added that "[Plaintiff] has at least a high school education and is able to communicate in English (20 CFR 404.1564)." Id. The ALJ found that "[Plaintiff's] acquired job skills do not transfer to other occupations within the [RFC] defined above (20 CFR 404.1568)." Id.

At step five, the ALJ found that "[f]rom December 12, 2009 through January 23, 2011, considering [Plaintiff's] age, education, work experience, and [RFC], there were no jobs that existed in significant numbers in the national economy that [Plaintiff] could have performed (20 CFR 404.1560(c) and 404.1566)." Id.

The ALJ, therefore, concluded that "[Plaintiff] was under a disability, as defined by the . . . Act, from December 12, 2009 through January 23, 2011 (20 CFR 404.1520(g))." Id.

### 2. ALJ's Found That Plaintiff Is No Longer Disabled Using The Eight Step Sequential Evaluation Process.

After concluding that Plaintiff was disabled for the first portion of the relevant time period, the ALJ then assessed whether Plaintiff remained disabled during the second portion of the relevant time period. After using the eight step sequential evaluation process described above, the ALJ found that Plaintiff was not disabled from January 24, 2011 through the date of the decision on May 11, 2016,. Tr. 335-42.

Because the ALJ already found at step one of the previously discussed five step sequential evaluation process that Plaintiff had not engaged in SGA since December 12, 2009, the ALJ began his assessment of whether Plaintiff remained disabled during the second portion of the relevant time period at step two of the eight step sequential evaluation process.

At step two of the eight step evaluation process, the ALJ found that "[Plaintiff] has not developed any new severe impairment or impairments since January 24, 2011, the date [Plaintiff's] disability ended. Thus, [Plaintiff's] current severe impairments are the same as that present from December 12, 2009 through January 23, 2011." Tr. 335. The ALJ found, however, that Plaintiff had a medically determinable, yet nonsevere, impairment in his cervical spine. Id. Specifically, the ALJ found that "there is objective evidence in the medical record that [Plaintiff] was evaluated and treated for an impairment in his cervical spine in early 2015," however, the ALJ determined that "while this impairment is medically determinable, it is nonsevere" because "this impairment occurred after [Plaintiff's] date last insured, in June 2014." Id.

Included in the evidence observed by the ALJ when finding that Plaintiff's spine impairment was nonsevere was a 2015 "MRI indicat[ing] multilevel degenerative disc disease with disc osteophyte complex at C5-7, resulting in moderate to severe degenerative disc disease and neural foraminal stenosis." Id.

1  (citing Tr. 630).  The ALJ further observed that "[n]erve conduction testing in
2  October 2015 confirmed median sensory neuropathy on the right and
3  demyelinating neuropathy on the left, as well as acute denervation on the left."  Id.
4  (citing Tr. 625).  The ALJ added that "[a]n orthopedic surgeon recommended
5  surgery and [Plaintiff] underwent a cervical spine procedure in early 2016" and
6  "[i]t is unclear how [Plaintiff] will recover from his procedure, as it occurred very
7  close to the hearing that."  Id. (sentence stopped here in original).

8      After determining that Plaintiff had not developed any new severe
9  impairments, the ALJ concluded his analysis at step two by finding that
10 "[b]eginning January 24, 2011, [Plaintiff] has not had an impairment or
11 combination of impairments that meets or medically equals the severity of one of
12 the impairments listed in [the Listings]."  Tr. 336.  In so finding, the ALJ
13 considered and discussed Plaintiff's physical and mental impairments.  Id.

14     With respect to Plaintiff's physical impairments, the ALJ found that
15 Plaintiff's impairments "do not meet or medically equal the criteria of any medical
16 listing, singly or in combination" because "[n]o treating or examining physician
17 has recorded findings equivalent in severity to the criteria of any listed impairment,
18 nor does the evidence show medical findings that are the same or equivalent to
19 those of any listed impairment."  Id.

20     With respect to Plaintiff's mental impairments, the ALJ found that
21 beginning January 24, 2011, "[t]he severity of [Plaintiff's] mental impairment does
22 not meet or medical equal the criteria of Listing 12.04."  Id.  In so finding, the ALJ
23 specifically found that Plaintiff had only "mild" limitations in his ADLs and social
24 functioning, "moderate" limitations in concentration, persistence, and pace, and
25 that Plaintiff had not "experienced any episodes of decompensation of extended
26 duration" as a result of Plaintiff's medically determinable mental impairments.  Tr.
27 336-37.

28

12

With respect to Plaintiff's ADLs, the ALJ observed that Plaintiff "stated in function reports that he is able to shower, watch the news, read the newspaper, empty the trash, do paperwork and make phone calls, and also stated that he helps his wife, who has polycystic kidneys and is often in pain." Tr. 336 (citing Tr. 217-18). The ALJ also observed that Plaintiff "stated that he feeds their small dogs and cleans up after them, prepares simple meals, does dishes and light cleaning, drives and buys groceries and flies remote control airplanes once per week." Id. (citing Tr. 219-21). Finally, the ALJ observed that Plaintiff "later stated to a consultative examiner that he was able to take care of basic grooming and hygiene and had difficulty with household tasks, due to low motivation and energy, though he still prepared meals, and indicated he spends his day taking short walks and watching television." Id. (citing Tr. 520).

With respect to Plaintiff's social functioning, the ALJ observed that "[w]hile [Plaintiff] told an examiner that he has few friends and rarely socializes, he admitted that he has a fair relationship with family and stated in a function report that he had no problems getting along with others." Id. (citing Tr. 222-24). The ALJ also observed that Plaintiff "indicated further that he spends time with others at the flying field and on the phone and internet" and "[t]he consultative examiner also found [Plaintiff] to be cooperative." Id. (citing 221, 520).

With respect to Plaintiff's concentration, persistence and pace, the ALJ observed that Plaintiff "testified that he had memory issues and difficulty remembering to pay bills due to depression" but "stated in a function report that he can pay attention for three to five minutes, is able to follow written and spoken instructions and is able to handle changes in routine, though he does not handle stress very well." Tr. 336-37 (citing Tr. 222-23). The ALJ also observed that "[a]n examiner noted that [Plaintiff] was able to perform serial sevens, but showed mildly impaired memory on testing." Tr. 337 (citing Tr. 521, 523).

At step three, the ALJ found that "[m]edical improvement occurred as of January 24, 2011, the date [Plaintiff's] disability ended (20 CFR 404.1594(b)(1))." Id. In so finding, the ALJ cited to a variety of pieces of evidence in the records. For example, at an Agreed Medical Evaluation ("AME") performed by an orthopedic specialist on January 24, 2011, Plaintiff "was noted to have normal gait, as well as normal findings in his cervical and thoracic spine." Id. (citing 249-50). Plaintiff "showed only tenderness in his right knee, and an MRI reflected only a small cyst and possible osteochondral injury . . . [Plaintiff] was noted to have lumbar tenderness, without muscle spasm, and normal sensation, though he reported low back pain with straight leg raising." Id. (citing Tr. 251-53, 255). Additionally, the "examiner noted right ankle tenderness and loss of range of motion, as well as decreased left ankle range of motion." Id. (citing Tr. 337). Plaintiff was "diagnosed with lumbosacral chronic sprain/strain, right ankle chronic sprain and left ankles status post open reduction internal fixation, unrelated to his workplace accident." Id. (citing Tr. 253-54). The ALJ concluded that "[t]his evidence, including the lack of findings in [Plaintiff's] cervical and thoracic spines, as well as improvement in his right knee, indicates that medical improvement had occurred as of this date." Id.

At step four, the ALJ determined that "[t]he medical improvement that has occurred is related to [Plaintiff's] ability to work because there has been an increase in [Plaintiff's] [RFC] (20 CFR 404.1594(b)(4)(i))" when "comparing [Plaintiff's] RFC] for the period during which he was disabled with the [RFC] beginning January 24, 2011." Tr. 338. The ALJ specifically determined that beginning January 24, 2011, Plaintiff had the RFC to:

perform medium work as defined in 20 CFR 404.1567(c) with the following exceptions: [Plaintiff] is occasionally able to lift and/or carry 35 pounds; is frequently able to lift and/or carry 25 pounds; is occasionally able to stoop, kneel, squat, crawl, crouch and climb ramps,

14

stairs, ladders, ropes and scaffolds; is able to stand, walk and/or sit for six hours each in an eight-hour day and is able to understand, remember and perform three- and four-step instructions and procedures.

Id.

At step four, the ALJ determined that "[b]eginning January 24, 2011, [Plaintiff] has been capable of performing [PRW] as a construction clerk. This work does not require the performance of work-related activities precluded by [Plaintiff's] current [RFC] (20 CFR 404.1656)." Tr. 341. Having determined that Plaintiff can perform his PRW, the ALJ concluded that "[Plaintiff's] disability ended January 24, 2011 (20 CFR 404.1594(f)(7))." Tr. 342.

**D.** **Issue Presented**

In this appeal, Plaintiff raises only one issue: "[w]hether the ALJ properly considered [Plaintiff's] testimony." ECF No. 28, Joint Stipulation at 7.

**1.** **ALJ's Consideration Of Plaintiff's Testimony**

With respect to Plaintiff's symptom statements, the ALJ made two findings. First, with respect to Plaintiff's statements relating to his impairments during the time period that the ALJ found Plaintiff was disabled, the ALJ found that "[Plaintiff's] statements concerning the intensity, persistence, and limiting effects of [Plaintiff's] symptoms are generally consistent with the evidence from December 12, 2009 through January 23, 2011." Tr. 333-34.

With respect to Plaintiff's statements relating to his impairments during the time period that the ALJ found Plaintiff was not disabled—from January 24, 2011, through the date of the decision on May 11, 2016—the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to produce the alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." Tr. 339. Specifically, the ALJ found that Plaintiff's "allegations

15

regarding the severity of his symptoms and limitations after January 24, 2011, are greater than expected in light of the objective evidence of record." Tr. 340.

The ALJ explained that "while [Plaintiff] had disabling limitations in his lumber spine prior to January 2011, the evidence indicates that those symptoms largely resolved by the time of his date last insured in 2014." Id. The ALJ added that Plaintiff's "lumbar spine showed only tenderness and periodic limited range of motion after 2011, with no significant evidence of radiculopathy, including normal motor strength and sensation." Id.

The ALJ found "no evidence [that Plaintiff] used a cane or walker, as he testified at the hearing. Notably, the record documents no significant treatment whatsoever in 2013." Id. The ALJ noted that Plaintiff "underwent right knee surgery that appeared to address the most significant of his symptoms" and "[a]fter January 2011, [Plaintiff] continued to show some tenderness and crepitus, but diagnostic findings were mild and no further surgery was recommended." Id. The ALJ also noted that Plaintiff's "ankle symptoms also appear to have resolved after May 2012" and "[w]hile [Plaintiff] eventually developed a cervical spine impairment, this occurred after his date la[st] insured, as confirmed by diagnostic imaging in 2012 containing only mild findings." Id. Finally, the ALJ noted that Plaintiff "admitted that he has only taken medication for depression sporadically, and the record reflects no significant treatment for this condition. Dr. Zhang's examination was mostly normal, and no diagnosis was made." Id.

The ALJ, therefore, found that Plaintiff's "subjective complaints are not entirely consistent with the objective medical evidence, which does not support the alleged degree of symptom severity and functional limitations." Tr. 341. The ALJ added that "[i]n addition, no treating or examining medical source endorsed the degree of limitation alleged by [Plaintiff] or assessed more restrictive functional limitations than those determined in this decision." Id. The ALJ concluded that "the [RFC] determined in this decision reflects [Plaintiff's] subjective complaints

while finding the maximum limitations based on the clinical and objective evidence." Id.

### 2. Plaintiff's Argument

Plaintiff raises three arguments in support of his contention that the ALJ erred in his analysis of Plaintiff's subjective symptom statements. ECF No. 28, Joint Stipulation at 11-14. First, Plaintiff argues that "the ALJ simply sets forth the oft rejected boilerplate language numerous courts have rejected as boilerplate . . . [and] the conclusory statement of the ALJ in this matter is wholly insufficient." Id. at 11. Second, Plaintiff argues that "it appears that . . . the ALJ simply rejects [his] testimony based on a belief that the testimony is not credible because it lacks support in the objective medical evidence[,]" which Plaintiff argues "is always legally insufficient." Id. Finally, Plaintiff argues that "the ALJ finds [him] not credible because no physician supported [Plaintiff's] description of limitations" and this "rationale is not legitimate." Id. at 13.

### 3. Defendant's Response

Defendant responds by arguing that the reasons provided by the ALJ for finding Plaintiff's statements inconsistent with the record were "clear, because they were based on substantial evidence in the record, and convincing, because they are reasonable and rely on credibility factors recognized by the Ninth Circuit." Id. at 19. Defendant specifically asserts that "the ALJ noted the lack of objective medical evidence supporting Plaintiff's claims of limitations, his [ADLs], inconsistencies in the record and Plaintiff's sporadic treatment history, evidence of exaggeration, as well as conservative treatment." Id.

### 4. Standard To Review Plaintiff's Pain Related Claims

When a claimant has medically documented impairments that "might reasonably produce the symptoms or pain alleged and there is no evidence of malingering, the ALJ must give 'specific, clear, and convincing reasons for rejecting' the testimony by identifying 'which testimony [the ALJ] found not

credible" and explaining 'which evidence contradicted that testimony.'" <u>Laborin v. Berryhill</u>, 867 F.3d 1151, 1155 (9th Cir. 2017) (emphasis in original) (quoting <u>Brown-Hunter v. Colvin</u>, 806 F.3d 487, 489, 494 (9th Cir. 2015)). "This is not an easy requirement to meet: 'the clear and convincing standard is the most demanding required in Social Security cases.'" <u>Garrison v. Colvin</u>, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting <u>Moore v. Comm'r Soc. Sec. Admin.</u>, 278 F.3d 920, 924 (9th Cir. 2002)).

"The ALJ may consider inconsistencies either in the claimant's testimony or between the testimony and the claimant's conduct." <u>Molina v. Astrue</u>, 674 F.3d 1104, 1112 (9th Cir. 2012). Also, while an ALJ cannot reject the severity of subjective complaints solely on the lack of objective evidence, the ALJ may nonetheless look to the medical record for inconsistencies. <u>See</u> <u>Morgan v. Comm'r Soc. Sec. Admin.</u>, 169 F.3d 595, 599-600 (9th Cir. 1999) (finding that "[t]he ALJ provided clear and convincing reasons for rejecting [the plaintiff's] testimony" by "point[ing] to specific evidence in the record—including reports by [the plaintiff's doctors]—in identifying what testimony was not credible and what evidence undermined [the plaintiff's] complaints.").

### 5. The Record Requires The ALJ To Further Review Plaintiff's Statements.

Here, as an initial matter, the parties do not dispute the ALJ's finding with respect to Plaintiff's symptom statements during the period from December 12, 2009 through January 23, 2011, when the ALJ found that Plaintiff was disabled. The Court finds no error with regard to this earlier finding by the ALJ. Instead, the parties disagree with each other regarding the ALJ's latter finding relating to Plaintiff's symptom statements from January 24, 2011 through May 11, 2016, the date of the decision. Accordingly, because the parties dispute only the ALJ's latter finding, and because the Court finds no error in the ALJ's former finding, the Court discusses only the ALJ's latter findings below.

With respect to Plaintiff's first argument—that the ALJ's inclusion of the boilerplate language at the outset of his adverse credibility finding does nothing to assist this Court with its analysis of the ALJ's finding—the Court agrees with Plaintiff's position.  See Treichler v. Comm'r Soc. Sec. Admin., 775 F.3d 1090, 1103 (9th Cir. 2014) ("An ALJ's 'vague allegation' that a claimant's testimony is 'not consistent with the objective medical evidence,' without any 'specific findings in support' of that conclusion is insufficient for our review" and this "hackneyed language seen universally in ALJ decisions adds nothing" to the court's analysis of the ALJ's finding. (internal citations omitted)).  The Court finds, however, that the mere inclusion of this boilerplate language was harmless and does not constitute reversible error.  See Laborin v. Berryhill, 867 F.3d 1151, 1154-55 (9th Cir. 2017) ("[I]nclusion of [similarly] flawed boilerplate language is not, by itself, reversible error and can be harmless.  It does not, however, add anything to the ALJ's determination of either the RFC or the claimant's credibility." (internal citation omitted)).

The Court next turns to Plaintiff's second argument—that the ALJ erred by finding that his testimony was not credible because it lacks support in the objective medical evidence—and, again, the Court agrees with Plaintiff.  ECF No. 28, Joint Stipulation at 11.  As discussed above, the ALJ found Plaintiff's symptom statements not credible, in part, because "[t]here is no evidence [Plaintiff] used a cane or walker, as he testified at the hearing"; "the record documents no significant treatment whatsoever in 2013" and "no significant treatment" for Plaintiff's depression; and because the medical evidence demonstrates that Plaintiff's knee, ankle, and cervical spine impairments had improved.  Tr. 340. The Court first addresses the ALJ's finding with respect to Plaintiff's use of assistive devices.

/ / /

/ / /

### a. Plaintiff's Use Of A Walker

With respect to Plaintiff's use of a walker, Plaintiff testified at the April 14, 2016, administrative hearing that he had only been using a walker "for about a month" after being discharged from the hospital "on the 16th of [the previous] month" following neck surgery. Tr. 358-59. Further, when asked by the ALJ if he used a walker before that surgery, Plaintiff responded "no, I didn't have a walker before then. I had a cane and also had crutches that I would use every once in a while if I was having like a really bad day or something." Tr. 359. Notably, on a function report that Plaintiff completed on April 21, 2012, Plaintiff checked a box indicating that the only assistive device he uses is a knee brace that was prescribed to him after his knee surgery, which Plaintiff noted he used only "when [his] knee hurts and feels weak and wobbly or when [he] ha[s] to walk a distance." Tr. 223.

Accordingly, because the Court can find no evidence in the record of Plaintiff claiming that he required a walker generally, and instead, can find only Plaintiff's testimony from the hearing that Plaintiff began using a walker only after his neck surgery, which took place less than one month before the hearing, the Court finds that the lack of evidence in the record concerning Plaintiff's use of a walker does not constitute a clear and convincing reason for finding Plaintiff's symptom statements not credible.

### b. Plaintiff's Use Of A Cane And Crutches

Similarly, with respect to Plaintiff's use of a cane and crutches, as discussed above, Plaintiff did not claim that he required the use of a cane or walker on the function report he completed on April 21, 2012. Moreover, a close inspection of the transcript from the April 14, 2016, administrative hearing reveals that Plaintiff provided only two lines of testimony regarding his use of a cane and crutches. First, as discussed above, Plaintiff testified at the administrative hearing that he used crutches and a cane only every once in a while if he was having a really bad day. Second, Plaintiff responded to a question asked by the ALJ later in the

administrative hearing, regarding his use of a cane, to which the ALJ appeared to interrupt Plaintiff before Plaintiff could provide a complete response.  Specifically, the ALJ asked Plaintiff—"[a]fter you had your injury[,] did you use a cane right after it?  Before you had your knee surgery[,] were you using a cane?"—to which Plaintiff responded—"[o]h, yes, I ended up walking into therapy with crutches and that's when they—"  Tr. 395 (sentence stopped here in original).  Plaintiff's testimony then stopped mid-sentence and the ALJ began asking the VE questions about a hypothetical person's ability to perform work if that hypothetical person required the use of a cane to ambulate.  Id.

Accordingly, because Plaintiff denied the use of a cane and crutches in his function report and stated that he uses these devices only on really bad days, and because Plaintiff did not have an opportunity to finish explaining the circumstances surrounding his use of these devices when asked by the ALJ at the administrative hearing, the Court finds that the lack of evidence in the record regarding Plaintiff's use of a cane or crutches does not constitute a clear and convincing reason for finding Plaintiff's symptom statements not credible.

### c.  *Plaintiff's Lack Of Treatment*

With respect to Plaintiff's lack of treatment, the district court already addressed this issue in its previous remand order and found that the record does not support this conclusion because Plaintiff's lapse in treatment was apparently a result of difficulties Plaintiff was having with his insurance.  See Tr. 441 ("[T]o the extent that the ALJ characterized plaintiff's failure to obtain physical therapy or other treatment as undermining his credibility, the record does not support this conclusion" (additional citations omitted) (quoting Orn v. Astrue, 495, F.3d 625, 638 (9th Cir. 2007) (a "[p]laintiff's 'failure to receive medical treatment during the period that he had no medical insurance cannot support an adverse credibility finding.'")).  The Court specifically observed that at the initial January 10, 2013,

hearing, when the ALJ asked Plaintiff if he had any other medical treatment, Plaintiff answered:

> "No. You know, I have this Arrowcare insurance . . . and, they're—
> the doctor, three, four months—three months ago, they were supposed
> to send me to Arrowhead Regional Medical Center and get me an MRI
> and get me going on some kind of pain control deal but--and every time
> I call, it's, like, well, we haven't got it scheduled yet, and—."

Tr. 441 (quoting Tr. 31) (sentence stopped here in original).

A close inspection of the record reveals that the ALJ interrupted at that point to ask Plaintiff another question before Plaintiff was able to complete his statement, to which Plaintiff, apparently in pain, replied "Oh, yeah. I got to stand up. Oh, man." Tr. 31.

Accordingly, on the record, Plaintiff's lapse in treatment that began in 2013 appeared to be a result of difficulties Plaintiff was having with his insurance carrier, which the district court previously observed, and the Administration failed to clarify, on remand. As such, this Court reiterates the district court's previous finding that the record does not support the ALJ's finding that Plaintiff's failure to obtain treatment does not undermine Plaintiff's credibility because the lapse in treatment 2013 is explained by difficulties Plaintiff had with his insurance carrier. Orn, 495 F.3d at 638.

> d. *Plaintiff's Statements In Relation To The Objective Evidence*

With respect to the ALJ's finding that Plaintiff's symptom statements were not credible because they were "greater than expected in light of the objective evidence of record[,]" the Court finds this reason unconvincing and not supported by substantial evidence for two reasons. Tr. 340.

First, the objective evidence of record was lacking as a result of the difficulties Plaintiff had with his insurance carrier. Again, Plaintiff testified that he tried for months to get an MRI and get "on some kind of pain control deal[,]" but

"every time [he] call[ed]" to get an appointment with his doctor, he was unable to do so through no fault of his own.  Tr. 31.  Thus, it follows that if Plaintiff was unable to receive treatment for his symptoms as a direct result of the difficulties he had with his insurance carrier—despite making multiple calls attempting to secure treatment over at least a several month span—Plaintiff's symptom statements might be greater than the objective evidence of record that Plaintiff was unable to secure.

Second, the evidence of the treatment that Plaintiff was able to secure does not support the ALJ's conclusion.  For example, with respect to the limitations caused by Plaintiff's knees, the ALJ found that Plaintiff's right knee surgery "appeared to address the most significant of his symptoms."  Tr. 340.  The ALJ supported this finding by explaining that "[a]fter January 2011, he continued to show some tenderness and crepitus, but diagnostic findings were mild and no further surgery was recommended."  <u>Id.</u>  A close inspection of the record, however, reveals that Plaintiff continued to experience significant symptoms in his right knee during and after 2011.

For example, an inspection of the clinical findings from the AME on January 24, 2011, which the ALJ accorded "significant weight" to, reveal that Plaintiff still displayed significant symptoms, some of which, directly contradicted the RFC that the ALJ endorsed.  Tr. 340.  Specifically, the orthopedic examiner noted that Plaintiff made "attempts at squatting which [Plaintiff] cannot fully perform."  Tr. 254, 256.  The ALJ, however, found that as of that date, Plaintiff had medically improved such that Plaintiff now had the RFC to occasionally stoop, kneel, squat, crawl, and crouch.  Tr. 338.  The medical examiner also opined that Plaintiff had achieved "maximum medical improvement[,]" was "considered to have reached a plateau in his condition[,]" but that Plaintiff would nevertheless "require additional conservative treatment [for his knee] including symptomatic medication

and courses of physical therapy, as well as possible injections and additional diagnostic studies." Tr. 255, 258. (capitalization normalized).

Thus, the evidence of record suggests that, contrary to the ALJ's finding, Plaintiff continued to experience symptoms in January 2011 that prevented Plaintiff from being able to fully squat, would require physical therapy and medication, and would not improve because Plaintiff's recovery had plateaued and he had achieved maximum medical improvement at that time.

The orthopedic examiner's finding that Plaintiff's recovery had plateaued in January 2011 is bolstered by an examination of Plaintiff's medical records from 2012. For example, at an orthopedic evaluation that took place on February 28, 2012, the evaluator noted that "[b]oth [Plaintiff's] knees are noted to lock up and give out underneath [Plaintiff]." Tr. 287. The orthopedic evaluator also noted that Plaintiff "has undergone left ankle and right knee surgery in the past with mild effect," and that "[i]n addition to the surgery, [Plaintiff] ha[d] received physical therapy as well as oral analgesic medications for his various pain complaints with mild-to-moderate effect." Id. An examination of Plaintiff's lower extremities revealed "pain upon range of motion of the right knee" and a "smooth range of motion of all [Plaintiff's] joints except the neck, lower back, right knee, and right ankle limited secondary to pain." Tr. 289.

Similarly, medical records from March 30, 2012, indicate that Plaintiff had experienced falls, depression, and chronic back pain at that time and, consequently, was prescribed Ibuprofen in 800 milligram doses for his pain. Tr. 297.

Finally, Plaintiff testified at the 2016 administrative hearing that he had surgery on his right knee that he "never recovered from." Tr. 365. Plaintiff added that as a result of his right knee instability, he "would just fall down" and that "three or four months ago, [his] . . . left knee gave out on [him] and [he] fell and . . . hurt [his] hip." Id., Tr. 390. Plaintiff added that he "probably fell down a couple dozen times driving [his] knee directly into the ground. It took about that many

24

times before they finally gave [him] a knee brace that would stop the, you know, [his] knee from doing that to me but by then the damage was already done, you know." Tr. 390. This evidence cumulatively suggests that Plaintiff still experienced symptoms of pain and instability as a result of his right knee.

Accordingly, because the evidence discussed above contradicts the ALJ's finding that Plaintiff's most significant right knee symptoms had improved after his surgery, the Court finds that this was not a clear and convincing reason supported by substantial evidence for finding Plaintiff's symptom statements not credible.

As such, the disputed issue requires further exploration by the Agency and, therefore, warrants reversal of the Commissioner's decision. Remand for further proceedings is appropriate here because additional administrative proceedings could remedy the above discussed defects in the ALJ's decision. See Lewin v. Schweiker, 654 F.2d 631, 635 (9th Cir. 1981) ("If additional proceedings can remedy defects in the original administrative proceeding, a social security case should be remanded" and "[t]his decision lies within the discretion of the court."); See also Garrison v. Colvin, 759 F.3d 995, 1009 (9th Cir. 2014) (holding that under sentence four of 42 U.S.C. § 405(g), "[t]he court shall have power to enter . . . a judgment affirming, modifying, or reversing the decision of the Commissioner . . . , with or without remanding the cause for a rehearing." (citation and internal quotation marks omitted)).

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

## IV.    CONCLUSION

Because the Commissioner's decision is not supported by substantial evidence, IT IS HEREBY ORDERED that the Commissioner's decision is **REVERSED** and this case is **REMANDED** for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

IT IS SO ORDERED.

DATED:  6/26/2018

_____

HONORABLE SHASHI H. KEWALRAMANI
United States Magistrate Judge